**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **ROSITA MCCAMEY, individually** | ) | |
| **and on behalf of all others similarly** | ) | |
| **situated,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  5:17-CV-1429-UJH-VEH** |
| | ) | |
| **CAPITAL MANAGEMENT,** | ) | |
| **SERVICES, LP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

In 1977, Congress found that there was "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" and that the "[e]xisting laws . . . [were] inadequate to protect consumers." 15 U.S.C. § 1692(a), (b); *see also* 104 AM. JUR. PROOF OF FACTS 3D *Proof Under the Fair Debt Collection Practices Act* §1. To respond, Congress passed the Fair Debt Collection Practices Act "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e). This law

is the centerpiece of Plaintiff Rosita McCamey's lawsuit and the focus of today's opinion. (Doc. 1).

Before the Court is Defendants Capital Management Services, LP's ("CMS") and Jefferson Capital Systems, LLC's ("JCS") joint Motion To Dismiss (the "Motion") under Rule 12(b)(6) and 12(c). (Doc. 32). The parties have completed their briefing, and the Motion is ripe for review. For the reasons stated in this opinion, it is due to be **DENIED**.

## II.  RELEVANT BACKGROUND

"[I]n 2007 Ms. McCamey fell behind in paying some of her debts, including one she allegedly owed for a Fingerhut account." (Doc. 1 at ¶7). "Sometime after that debt became delinquent, it was allegedly purchased/obtained by [JCS], which tried to collect upon it, by having Defendant CMS demand payment of the debt, via collection letters, dated February 12, 2017[,] and May 6, 2017." (*Id.*). "These letters made 'settlement' offers of 66% and 61%." (*Id.*). They also stated:

> As a result of the expiration of the statute of limitations with respect to such debt, legal action may not be brought against the consumer to collect such debt. Any payment by the consumer towards the debt may cause the statute of limitations for such debt to reset.

(Doc. 1-1 at 1-2). Ms. McCamey alleges that her debt was time barred under Alabama law, and that these letters violated the FDCPA. (*See* Doc. 1 at ¶¶8-9). She filed her federal lawsuit on August 22, 2017, alleging two counts for violations of §1692e and

§1692f of the FDCPA. (*See id.* at pg. 4-6).

## III.   THE RULE 12(b)(6) AND 12(c) STANDARD

A Rule 12(b)(6) motion attacks the legal sufficiency of the complaint. *See* FED. R. CIV. P. 12(b)(6) ("[A] party may assert the following defenses by motion:  (6) failure to state a claim upon which relief can be granted[.]"). The Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957) (footnote omitted) (quoting FED. R. CIV. P. 8(a)(2)), *abrogated by Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007); *see also* FED. R. CIV. P. 8(a) (setting forth general pleading requirements for a complaint including providing "a short and plain statement of the claim showing that the pleader is entitled to relief").

While a plaintiff must provide the grounds of his entitlement to relief, Rule 8 does not mandate the inclusion of "detailed factual allegations" within a complaint. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 (quoting *Conley*, 355 U.S. at 47, 78 S. Ct. at 103). However, at the same time, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[O]nce a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563, 127 S. Ct. at 1969.

"[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine <u>whether they plausibly give rise to an entitlement to relief</u>." *Id.* (emphasis added). "Under *Twombly*'s construction of Rule 8 . . . [a plaintiff's] complaint [must] 'nudge[] [any] claims' . . . 'across the line from conceivable to plausible.' *Ibid.*" *Iqbal*, 556 U.S. at 680, 129 S. Ct. at 1950-51.

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for

judgment on the pleadings." FED. R. CIV. P. 12(c). As the Eleventh Circuit has

explained the Rule 12(c) standard:

> Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts. *See Bankers Ins. Co. v. Florida Residential Property and Cas. Joint Underwriting Ass'n*, 137 F.3d 1293, 1295 (11th Cir. 1998) (citing *Hebert Abstract Co. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)); *see also* Rule 12(c), [FED. R. CIV. P.] When we review a judgment on the pleadings, therefore, we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party. *See Ortega*, 85 F.3d at 1524 (citing *Swerdloff v. Miami Nat'l Bank*, 584 F.2d 54, 57 (5th Cir. 1978)). The complaint may not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Slagle*, 102 F.3d at 497 (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S. Ct. 99, 101–02, 2 L. Ed. 2d 80 (1957) & citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811, 113 S. Ct. 2891, 2916–17, 125 L. Ed. 2d 612 (1993)).

*Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

Further, "[w]hether the court examine[s] [a pleading] under Rule 12(b)(6) or

Rule 12(c), the question [remains] the same: whether the [complaint] stated a claim

for relief." *Sampson v. Washington Mut. Bank*, 453 F. App'x 863, 865 n.2 (11th Cir.

2011) (first alteration supplied; all other alterations in original) (quoting *Strategic

Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.,* 305 F.3d 1293, 1295 n.8 (11th

Cir. 2002)); *id.* (applying *Strategic Income* and concluding that court's error in

granting a dismissal under Rule 12(c) instead of Rule 12(b)(6) was harmless).

## IV. AN OVERVIEW OF THE FAIR DEBT COLLECTION PRACTICES ACT

"To assert a claim under the FDCPA, a plaintiff must establish the following elements: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Buckentin v. Sun Trust Mortg. Corp.*, 928 F. Supp. 2d 1273, 1294 (N.D. Ala. 2013) (citing sources).

The FDCPA prohibits certain conduct. "Section 1692e of the FDCPA provides that '[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 (11th Cir. 2014) (quoting 15 U.S.C. § 1692e). The statute goes on to give examples of specific conduct that violates the act. *See* 15 U.S.C. § 1692e (1)-(16). "Section 1692f states that '[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.'" *Crawford*, 758 F.3d at 1258 (quoting 15 U.S.C. § 1692f). Similarly, this section also gives specific examples of conduct violating the law. *See* 15 U.S.C. § 1692f(1)-(8).[1] "To enforce the

---

[1] It is crucial for the reader to understand that Ms. McCamey brought her action under §1692e and §1692f. (Doc. 1 at 4-6). The plain text of §1692e is very broad and makes clear that the examples of violations under that section are not meant to "limit[ ] the general application" that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See* 15. U.S.C. §1692e. While Ms. McCamey also mentions §1692e(2)(A) and §1692e(5) in her Complaint, mentioning those specific provisions

FDCPA's prohibitions, Congress equipped consumer debtors with a private right of action, rendering 'debt collectors who violate the Act liable for actual damages, statutory damages up to $1,000, and reasonable attorney's fees and costs.'" *Crawford*, 758 F.3d at 1258 (citing sources).

To understand actions under the FDCPA requires knowing the "least sophisticated consumer." *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1193 (11th Cir. 2010). This is because "[t]he inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the 'least sophisticated consumer' would have been deceived' by the debt collector's conduct." *Crawford*, 758 F.3d at 1258. "The 'least-sophisticated consumer' standard is consistent with basic consumer-protection principles." *LeBlanc*, 601 F.3d at 1194 (citing sources). "'The least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (quoting another source) (internal quotation marks omitted). "However, the test has an objective component in that '[w]hile protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of

---

does not detract from the overall prohibition mentioned in §1692e. (*See* Doc. 1 at 4-5). Accordingly, this Court would err if it focused on only one provision while ignoring the rest of the section. §1692f has a similar construction to §1692e. 15 U.S.C. §1692f.

reasonableness.'" *Id.* (quoting another source).

"Generally, 'whether the 'least sophisticated consumer' would construe [the conduct] as deceptive is a question for the jury.'" *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1307 n.11 (11th Cir. 2015) (quoting *Jeter v. Credit Bureau*, 760 F.2d 1168, 1178 (11th Cir. 1985)); *see also Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) (noting that in most cases "whether a letter is misleading raises a question of fact"). "Courts do not lightly reject fact-based claims at the pleading stage." *Buchanan*, 776 F.3d at 397. "[This Court] may do so only after drawing all reasonable inferences from the allegations in the complaint in the plaintiff's favor and only after concluding that, even then, the complaint still fails to allege a plausible theory of relief." *Id.* (citing FED. R. CIV. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009)).

## V.   ANALYSIS

The Defendants' primary argument is two-pronged. (*See* Doc. 32 at 2). They argue that the letter would not be misleading <u>without</u> the disclaimer, and that it was not misleading <u>with</u> the disclaimer. (*See id.*). A third, more peripheral, argument is that, under Alabama law, a partial payment would not have reset the statute of limitations anyway. (*See id.*). At bottom, resolving this Motion requires the Court to address one main issue: whether the letters sent to Ms. McCamey were in violation of

the FDCPA in light of the least sophisticated consumer standard.

### A. Statute of Limitations Disclaimers Are Not Required, but the Letters Here Could Have Been Deceptive to the Least Sophisticated Consumer Without One

The Defendants argue that "[Eleventh Circuit precedent] supports dismissal even if the letters did not contain the disclaimer." (Doc. 32 at 8) (emphasis and capitalization omitted). They start by noting that, in Alabama, "a creditor has the right to payment of a debt even after the limitations period has expired." (*See id.* at 9) (citing sources). They then go on to assert that "the sending of a letter seeking payment on an outstanding debt in and of itself cannot support liability under the FDCPA so long as the letter does not threaten litigation." (*See id.* at 9) (citing *Crawford v. LVNC Funding, LLC*, 758 F.3d 1254, 1259 (11th Cir. 2014)). This statement is correct in that "[f]ederal circuit and district courts have uniformly held that a debt collector's threatening to sue on a time-barred debt and/or filing a time-barred suit in state court to recover that debt violates §§ 1692e and 1692f." *See Crawford*, 758 F.3d at 1259 (citing sources). However, as the plain text of the FDCPA indicates, there are numerous ways that a debt collector can violate the statute; improperly threatening litigation is just one of them. *See* 15 U.S.C. §§ 1692e, 1692f.

Defendants then rely heavily on decisions from the Third and Eighth Circuits to support their main contention "that absent an explicit threat of litigation in a

collection letter or actual litigation, there could be no violation of the FDCPA" when a debt collector sends a letter to collect a time-barred debt without a disclaimer stating that fact. (*See* Doc. 32 at 9-12) (citing *Freyermuth v. Credit Bureau Servs., Inc.*, 248 F.3d 767 (8th Cir. 2001); *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011)). The Defendants further contend that at least two district courts in the Eleventh Circuit have followed their approach, while distinguishing one that did not. (*See id.* at 10-11) (citing *Elrich v. Convergent Outsourcing, Inc.*, 2015 U.S. Dist. LEXIS 145459, *7 (S.D. Fla. 2015); *Olsen v. Cavalry Porfolio Servs., LLC*, 2016 U.S. Dist. LEXIS 106186, *5 (M.D. Fla. 2016); *Lopera v. Midland Credit Mgmt.*, 2016 U.S. Dist. LEXIS 155960, *2 (M.D. Fla. 2016)).[2] In response, Ms. McCamey argues that "[t]he majority of appellate courts hold that a debt collector can violate the FDCPA when it makes a 'settlement offer' on a time-barred debt; a threat of litigation is not required for a violation." (*See* Doc. 39 at 8-9) (citing cases from the Third, Fifth, Sixth, and Seventh Circuits).[3]

    As an initial matter, it is clear to the Court that a debt collector can attempt to get a debtor to pay a debt that is time-barred. *Cf. Midland Funding, LLC v. Johnson*,

---

[2] The Court notes that district court opinions are not binding precedent.

[3] The Court has read and considered the Defendants' arguments distinguishing the cases from the other circuits. (*See* Doc. 32 at 12-18). The Court recognizes that the factual scenarios can vary. What the Court does in this opinion is apply the law surrounding the FDCPA to the facts of <u>this</u> case.

137 S.Ct. 1407, 1411 (2017) (citing sources) ("Alabama's law, like the law of many States, provides that a creditor has the right to payment of a debt even after the limitations period has expired."); *Buchanan v. Northland Group, Inc.*, 776 F.3d 393, 397 (6th Cir. 2015) ("There thus is nothing wrong with informing debtors that a debt remains unpaid or for that matter allowing them to satisfy the debt at a discount."). On some level, these efforts to collect time-barred claims are little more than appeals to a debtor's internal moral compass. *See Buchanan*, 776 F.3d at 397 ("Legal defenses are not moral defenses."); *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1020 (7th Cir. 2014) ("[S]ome people might consider full debt re-payment a moral obligation, even though the legal remedy for the debt has been extinguished."); *Pantoja*, 852 F.3d at 684 ("The creditor retains the legal right to appeal to the debtor to honor the debt out of a sense of moral obligation even if the legal obligation can no longer be enforced in court."). Of course, this effort must be consistent with the FDCPA. *See Pantoja*, 852 F.3d at 684 (citing 15 U.S.C. §§ 1692e, 1692f).

The parties agree that the Eleventh Circuit has not spoken conclusively on the questions raised in this case. (*See* Doc. 32 at 11); (*see also* Doc. 39 at 11) ("The Eleventh Circuit has not yet addressed the issue whether a 'settlement offer' on a time-barred debt can violate the FDCPA absent a threat of litigation.") (footnote omitted). For this reason, much of the ink spilled in briefing this Motion can only be

termed as a battle of persuasive authority. The Court is left to apply the law most consistent with the text of the FDCPA to the facts of this case. To do so, the Court starts with a very basic premise – words have meaning.

This Court has often advised litigants that their word choice matters because every word has meaning, connotations, and implications. Here, the primary focus is on the use of the word "settlement." (*See* Doc. 1-1 at 1, 2). The February 12, 2017, letter uses the word "settlement." (*See id.* at 1). Similarly, the May 6, 2017, letter describes a "SETTLEMENT OFFER" and uses the word "settlement" throughout the letter. (*See id.* at 2) ("[CMS] is willing to accept less than the full balance due as a settlement."); (*id.*) ("You may send the settlement payment to [CMS].").

Judge Sutton capably explained why this term could be misleading in the *Buchanan* decision:

> [A] "settlement offer" with respect to a time-barred debt may falsely imply that payment could be compelled through litigation. Formal and informal dictionaries alike contain a definition of "settle" that refers to concluding a lawsuit. On the formal side, one defines the verb as "to conclude (a lawsuit) by agreement between the parties usu[ally] out of court." *Webster's Third New International Dictionary* 2079 (2002). Another defines it as "[t]o decide (a case) by arrangement between the contesting parties." *OED Online*, Oxford University Press (September 2014), http://goo.gl/yd1KF6. A third defines "settlement" as "[t]he resolution of a lawsuit or dispute by settling." *The American Heritage Dictionary of the English Language* (5th ed.2014), *available at* http://goo.gl/dPSCMH. On the informal side, Wiktionary defines "settlement agreement" as "[a] contractual agreement between parties to actual or potential litigation by which each party agrees to a resolution

12

> of the underlying dispute." *See* http://goo.gl/00xE9s.[ ]And[ ]Dictionary.com defines "settle" as "to terminate (legal proceedings) by mutual consent of the parties." *See* http://goo.gl/vOmoty. Perhaps the best definition, one that accounts for the various ways an everyman individual might read the terms, appears oddly enough in *Black's Law Dictionary*. It acknowledges that the word is one of "equivocal meaning," "meaning different things in different connections, and the particular sense in which it is used may be explained by the context or surrounding circumstances." *Black's Law Dictionary* 1372 (6th ed. 1990). All of these definitions make it plausible to allege that a "settlement offer" falsely implies that the underlying debt is enforceable in court.

*Buchanan*, 776 F.3d at 399. The aforementioned passage is particularly persuasive, and the Court adopts that reasoning here. The Seventh Circuit has noted similar implications from "settlement" terminology:

> If a consumer received an "offer for settlement" and searched on Google to see what is meant by "settlement," she might find the Wikipedia entry for "settlement offer." *Settlement offer*, Wikipedia, (Mar. 10, 2014 at 4:06 pm), http://en.wikipedia.org/wiki/Settlement_offer. There she would learn that the term "offer to settle" is "used in a civil lawsuit to describe a communication from one party to the other suggesting a settlement—an agreement to end the lawsuit before a judgment is rendered."

*McMahon*, 744 F.3d at 1021. The least sophisticated consumer does not have a law degree. It is objectively reasonable for such a consumer, upon receiving a letter with "settlement offer" to start wondering about legal exposure.

The Court is not saying that anytime a debt collection letter uses the word "settlement" that it is misleading a debtor, or otherwise violating the FDCPA. *See Tatis*, 882 F.3d at 430. Far from it. In fact, one definition of "settlement" is: "payment

or adjustment of an account." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1069 (2000); *see also Tatis*, 882 F.3d at 429-30 (discussing the different meanings of "settle").

Defendants urge the Court to follow the lead of the Third and Eighth Circuits. (*See* Doc. 32 at 9-11) (citing *Freyermuth*, 248 F.3d 767; *Huertas*, 641 F.3d 28). In *Freyermuth*, the Eighth Circuit "[held] that, in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." *Freyermuth*, 248 F.3d at 771. However, the holding from *Freyermuth* is linked to the theories actually litigated by the parties. By way of example, under §1692e there are about sixteen ways in which the FDCPA can be violated. *See* 15 U.S.C. § 1692e. For example, even if a debt collector did not threaten litigation on a time-barred claim, this Court assumes that it could still be liable for "[t]he false representation or implication that any individual is an attorney." *See* 15 U.S.C. §1692e(3). The *Freyermuth* holding should not be stretched too far.

Defendants also point to the Third Circuit in *Huertas*. (*See* Doc. 32 at 9-11) (citing *Huertas*, 641 F.3d 28). However, seven years later, the Third Circuit revisited and further explained *Huertas* in *Tatis*. *See Tatis*, 882 F.3d at 427-28 (explaining what *Huertas* meant). *Tatis* recognized the limitations of the *Huertas* decision. *See id.* at

428 ("Thus, *Huertas* stands for the proposition that debt collectors do not violate 15 U.S.C. § 1692e(2)(A) when they seek voluntary repayment of stale debts, so long as they do not threaten or take legal action. <u>But the FDCPA sweeps far more broadly than the specific provision found in § 1692e(2)(A)</u>. It prohibits '*any* false, deceptive, or *misleading representation*' associated with debt-collection practices. 15 U.S.C. § 1692e (emphasis added).") (emphasis by underlining added). *Tatis* went on to say that "construing the Act to require a threat of legal action for any FDCPA violation interposes a mandate that is not found in its text." *See id.* at 429 (citing *McMahon*, 744 F.3d at 1020-21). Accordingly, *Tatis* speaks more clearly to the question before the Court.

The Court holds that a letter attempting to collect a time-barred debt can violate the FDCPA, even if it does not expressly threaten litigation, if it is otherwise prohibited by the FDCPA. This approach is consistent with the sound reasoning of other circuits, and it best applies the plain text of the statute. Guided by the persuasive circuit authority, the Court finds that the letters (without considering the disclaimer at the bottom of the page) could be considered deceptive to the least sophisticated consumer. The least sophisticated consumer could see the settlement terminology throughout the letter and be under the impression that his debt was legally enforceable. This reasonable impression could make the least sophisticated consumer

more likely to pay money on a debt that was legally unenforceable. However, since the letters each had a disclaimer, the Court next considers the effect of that disclaimer.

**B.     The Disclaimers Are Not Unambiguous as a Matter of Law so as To Render the Letters in Compliance with the FDCPA**

The Court now looks at the language of the disclaimer to see its effect on the understanding the least sophisticated consumer would have. The parties have not pointed the Court to any legal precedent using the exact same language at issue here. Ms. McCamey takes issue with the disclaimer in the ways discussed below.

The first issue here is whether the use of the phrase "may not" renders the disclaimer ambiguous. (*See* Doc. 39 at 14-17); (Doc. 45 at 7-8). This presents an interesting question because the word "may" also can have different meanings in different contexts. To illustrate this, the Court turns to Black's Law Dictionary. It defines "may" as "[t]o be permitted to" and "[t]o be a possibility." *May*, BLACK'S LAW DICTIONARY (10th ed. 2014). Among other definitions, Merriam-Webster's Collegiate Dictionary defines "may" as "have the ability to" and "used to indicate possibility or probability." *See May*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 2000).

Obviously, Defendants would prefer the definition of "may" that speaks to permission, while Ms. McCamey would prefer the definition of "may" that speaks to probability. (*See* Doc. 45 at 6-8); (Doc. 39 at 16). Here is the disclaimer as it appeared

in the letter:

> As a result of the expiration of the statute of limitations with respect to such debt, legal action may not be brought against the consumer to collect such debt. Any payment by the consumer towards the debt may cause the statute of limitations for such debt to reset.

(Doc. 1-1 at 1-2). With one definition of "may" it could read:

> As a result of the expiration of the statute of limitations with respect to such debt, legal action [is not permitted to] be brought against the consumer to collect such debt. Any payment by the consumer towards the debt [is permitted to] cause the statute of limitations for such debt to reset.

With the other definition of "may" it could read:

> As a result of the expiration of the statute of limitations with respect to such debt, legal action [possibly or probably will not] be brought against the consumer to collect such debt. Any payment by the consumer towards the debt [possibly or probably will] cause the statute of limitations for such debt to reset.

The question before the Court is whether these two readings are both reasonable, thus creating a question of fact, or whether the latter reading is "bizarre or idiosyncratic." *LeBlanc*, 601 F.3d at 1194 (quoting another source, quotation marks omitted). This matters, because the Court cannot say as a matter of law that the latter reading is sufficient to dispel any misconceptions about the legal status of the debt created through the previous use of "settlement" language discussed in sub-section A.

Linguistically, people use the word "may" both ways in oral conversations all the time. People can usually distinguish between its various meanings through context

17

clues and oral inflections. However, when reading words, those oral inflections do not come through. This is part of the reason why people sometimes misunderstand written communication.

This is not to say that the written "may" is always ambiguous. Defendants point out that the FDCPA itself "enforces liability through the same 'may not' language." (*See* Doc. 32 at 23) (citing 15 U.S.C. §§ 1692e, 1692f). Obviously, reading the statute to include a "may" that indicates "possibility or probability" would lead to an absurd result.[4] But the letters before the Court are not that statute, and the Court must put itself in the shoes of the least sophisticated consumer when reviewing the letters.

Ms. McCamey also argues that because "[t]he disclosure is written in the third person" it "would not necessarily be understood as applying to this specific debt or to the recipient of the letters." (Doc. 39 at 16). In response, Defendants imply that this understanding is "bizarre" and "idiosyncratic." (*See* Doc. 45 at 6-7) (using the language from *LeBlanc*, 601 F.3d at 1194). On this point, the Court agrees with Defendants. While it is poor writing form to go from referring to the reader of the letter as "you" to "the consumer" and "this debt" to "such debt," the Court cannot say that even the least sophisticated consumer could not figure out that the Defendants are

---

[4] "[T]he law tries to avoid absurd results." *Durr v. Shinseki*, 638 F.3d 1342, 1344 (11th Cir. 2011).

referring to her and her debt.

Defendants argue that the language they used "is virtually identical to that used in prior bills proposed in the House of Representatives concerning debt collection." (*See* Doc. 32 at 22) (citing proposed legislation). The Court notes the similarities. But this argument holds little weight because "Congress speaks through the laws it enacts." *Cf. In re Aiken County*, 725 F.3d 255, 260 (D.C. Cir. 2013). What Defendants cited was merely proposed legislation. (*See* Doc. 32 at 22).

Finally, the Court must determine whether it should dismiss the case on legal grounds. The Fifth Circuit has discussed how to approach the division of law and fact in FDCPA cases:

> There are some letters that, as a matter of law, are not deceptive based on the language and placement of a disclaimer. At the other end of the spectrum, there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law, especially when they do not contain any disclaimer . . . . In the middle, there are letters that include contradictory messages and therefore present closer calls.

*Gonzalez v. Kay*, 577 F.3d 600, 606 (5th Cir. 2009). This case resides in that middle ground. Here is why. For the Court to rule in favor of Defendants (in the process saying that Ms. McCamey's claim is not even plausible), the Court has to make three critical leaps. First, the Court has to say that even the least sophisticated consumer would not understand "settlement" in a commonly understood meaning (implying legal action). Second, the Court has to say that even the least sophisticated consumer

would understand what the term "statute of limitations" means and how it applies to her.[5] Third, the Court has to say that the even least sophisticated consumer would understand "may not" to actually mean "cannot." The Court is unwilling to make those three leaps at only the pleading stage.

Defendants raise their concerns that the Court should not "'nitpick' the language used by a collector so long as the language provides sufficient information to put the debtor on notice of the statute of limitation issues." (*See* Doc. 45 at 8-9) (Doc. 32 at 21-22). The Court understands this concern. However, the Court is not attempting to dictate what language is effective, though Defendants had their pick of prior court-approved language.[6] The Court is not even holding that a disclaimer in a

---

[5] The parties have not specifically briefed whether the least sophisticated consumer would know what a "statute of limitations" is (and its legal implications), but the Court is skeptical that the least sophisticated consumer knows the meaning of this term.

[6] The Court notes that Defendants themselves have pointed to disclaimer language that has been effective in the past. (*See* Doc. 45 at 6) (citing two district courts); (Doc. 32 at 19-20). Additionally, there is language from the FTC that courts have looked favorably on:

> Given the potential for confusion, and to avoid creating a misleading impression, the FTC recommended that if a collector knows or should know that it is collecting on a time-barred debt, it must inform the consumer that (1) the collector cannot sue to collect the debt, and (2) providing partial payment would revive the collector's ability to sue to collect the remaining balance. FED. TRADE COMM'N, THE STRUCTURE AND PRACTICE OF THE DEBT BUYING INDUSTRY 47 (2013) (FTC Report 2013). . . . [The FTC consent] decree requires the company to disclose to consumers whether it knows or believes that a debt was incurred outside the limitations period, using this language: "The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it."

letter attempting to collect on a time-barred claim is required. However, since the letters use the word "settlement" several times, and the least sophisticated consumer could be misled by that terminology, there must be some language dispelling that potentially misleading terminology. In this case, the Court is not convinced that the disclaimer did so. In other words, the Court cannot determine at the very outset of litigation that the least sophisticated consumer would not misunderstand the letters, despite the disclaimer.

## VI. CONCLUSION

Throughout this opinion, the Court has evaluated the constituent relevant parts of the letters for the reader's benefit, but the Court decision is based on its consideration of the letters as a whole. Today's decision announces no new requirements and does not even require that a letter attempting to collect a time-barred debt include a disclaimer; the letter just cannot run afoul of the prohibitions in §1692e and §1692f. The Court also takes no position on the ultimate merits at the summary judgment stage. All Ms. McCamey has to do at this stage is move her §1692e and §1692f claims "across the line from conceivable to plausible." *See Iqbal*, 556 U.S. at 680 (internal quotations and citations omitted). She has done so. For the

_____

*Cf. McMahon*, 744 F.3d at 1015-16. That is not the language Defendants in this case chose to use. (*See* Doc. 1-1 at 1-2).

aforementioned reasons, the Motion is **DENIED**.

   **DONE** and **ORDERED** this the 10th day of August, 2018.

_[signature]_
_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge
